No. 102,055

STATE OF KANSAS, *Appellee*, v. MICHAEL RAE HENSLEY, *Appellant*.

(313 P.3d 814)

Opinion filed December 6, 2013.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause, and *Alice L. Walker*, legal intern, was with him on the brief for appellant.

*Amy E. Norton*, assistant county attorney, argued the cause, and *Christina Trocheck*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

MORITZ, J.: We granted Michael Rae Hensley's petition for review seeking reversal of a Court of Appeals decision affirming his convictions of possession of marijuana, possession of marijuana with no tax stamp affixed, and possession of drug paraphernalia. Hensley argues the panel erred in affirming the district court's conclusion that probable cause supported the issuance of a warrant to search his home and in rejecting his challenge to the district court's failure to compel the appearance of a witness. Additionally, he asserts the panel erred in rejecting his claim that his convictions of possession of marijuana and possession of marijuana with no tax stamp were multiplicitous.

We reject Hensley's assertions that the probable cause affidavit was insufficient and conclude Hensley's compulsory process claim of error fails because the district court never refused to issue process. However, we agree with Hensley that his convictions for possession of marijuana and possession of marijuana with no tax stamp are multiplicitous and reverse his conviction for possession of marijuana.

### FACTUAL AND PROCEDURAL BACKGROUND

Hensley's ex-girlfriend, Crystal Post, telephoned the Saline County Sheriff's Office in April 2007 and reported having seen a large amount of marijuana in Hensley's freezer the previous day and said she believed Hensley had a handgun. Post advised that she feared Hensley because they had previously had physical confrontations and Hensley had threatened her. A few days before Post contacted the sheriff's office, an unidentified woman advised an officer that there was a lot of traffic coming and going from a house where "Mike" lived and she was concerned someone in the house was dealing narcotics.

After receiving these tips, officers checked their in-house information on Hensley and learned the following: in December 2004, Hensley visited a local inmate arrested for marijuana possession; in January 2005, officers executed a search warrant on an apartment across the hall from Hensley's apartment and found his fingerprint on a baggie of marijuana; and in July 2005, an identified informant told police Hensley was his marijuana dealer in 2004. Officers also discovered that Hensley had a 1997 drug-related juvenile adjudication and that from 2003 to 2007 Hensley had several arrests related to domestic violence and one domestic violence conviction.

Armed with the tips, in-house information, and Hensley's criminal history, an investigator applied for and received a search warrant for Hensley's residence, person, and vehicle. As officers conducted pre-raid surveillance on Hensley's home, they saw two men drive up in a van, park, enter, and quickly leave Hensley's home. The officers followed the van and stopped it after the van's driver

committed a traffic violation. A search of the van revealed eight baggies of marijuana.

As officers searched the van, other officers executed the search warrant on Hensley's residence. During the search, officers discovered 200 grams of marijuana in Hensley's freezer, a folding lock blade knife, a baggie of marijuana, a pipe, rolling papers, and a marijuana roach with blunts.

Based on the contraband discovered during the search of the van and Hensley's home, the State charged Hensley with sale, delivery, or distribution of marijuana; possession of marijuana with intent to sell, deliver, or distribute; possession of marijuana with no tax stamp affixed; possession of drug paraphernalia; and criminal use of a weapon.

Hensley moved to suppress evidence discovered in the search of his home, arguing officers deliberately failed to disclose in the probable cause affidavit that Post had previously given false information to the police about Hensley and Hensley had previously secured a protection from abuse order against Post. The district court rejected this argument after the investigator who sought the warrant testified he was unaware Post had provided false information to police in the past. The district court also rejected Hensley's argument that the warrant was unsupported by probable cause, concluding the affidavit showed Hensley had a "fairly long-standing involvement in the marijuana culture."

On the morning of trial, the State filed a motion in limine seeking to prevent Hensley from soliciting testimony about his previous relationship with Post and arguing such testimony would not be probative. Hensley objected, suggesting Post had previously made false reports about his alleged illegal activities and that he intended to argue or "potentially argue" that Post had "planted" the marijuana found in his home.

Noting that evidence regarding the basis of a search warrant usually is irrelevant at trial, the district court deferred ruling on the motion and asked Hensley to proffer evidence regarding his and Post's relationship prior to offering it to the jury.

Before the court empanelled the jury, Hensley informed the court that Post had personally been served with a subpoena di-

recting her to appear for trial but she had failed to appear. Hensley requested a pick-up order to secure Post for trial. The district court responded, "Well see if you can't locate her and get her here. We'll deal with that after we get the jury on their way here."

After the court swore in the jury and recessed for lunch, Hensley requested the court's assistance in securing Post's address from her court services officer in order to locate Post. The district court indicated that it did not believe the court should involve itself in securing a witness until the witness violated a subpoena, but the court directed Hensley's counsel to check with court services to obtain Post's address. After the lunch break, Hensley's counsel informed the court she had obtained Post's address from court services and had unsuccessfully attempted to locate her.

During a recess later that afternoon the judge announced on the record that he would accompany Hensley's attorney to court services to seek assistance from Post's probation officer in contacting Post. When the judge and Hensley's counsel returned to the courtroom, the judge commented that Post's probation officer had agreed to contact Post and direct her to appear the following morning.

But the trial transcript from the following day contains no mention of Post or whether she appeared. Nor does the record contain any indication that Hensley sought a continuance, a pick-up order, or further assistance in locating Post. Instead, after the State rested, Hensley rested his case without presenting any evidence.

The jury convicted Hensley of possession of marijuana, possession of marijuana with no tax stamp affixed, and possession of drug paraphernalia. The district court imposed a 20-month jail term and 12 months' postrelease supervision but granted Hensley a 12-month probation period. Hensley timely appealed his convictions.

The Court of Appeals panel affirmed Hensley's convictions, concluding the district court did not violate Hensley's right to compulsory process because Hensley failed to proffer the materiality of Post's testimony. Further, the panel concluded the district court properly found the search warrant was supported by probable cause. *State v. Hensley*, No. 102,055, 2010 WL 3211709, at *4-6 (Kan. App. 2010) (unpublished opinion). Finally, the panel found

Hensley's convictions for possession of marijuana and possession of marijuana with no tax stamp did not violate K.S.A. 21-3107(2)(b), now codified at K.S.A. 2012 Supp. 21-5109(b)(2), which prohibits a defendant from being convicted of both a greater and lesser offense. 2010 WL 3211709, at *9.

Hensley petitioned this court for review, and we granted Hensley's request, obtaining jurisdiction under K.S.A. 20-3018(b).

## ANALYSIS

Hensley seeks reversal of all three of his convictions based on two arguments. First, he contends the district court erred in denying his motion to suppress evidence discovered in the search of his home because the search warrant was unsupported by probable cause. Next, Hensley argues the district court's failure to issue a pick-up order for Post denied Hensley his right to compulsory process. Alternatively, Hensley seeks reversal of one of his convictions for possession of marijuana and possession of marijuana with no tax stamp based on his claim that the convictions are multiplicitous in violation of the Double Jeopardy Clauses of the United States and Kansas Constitutions. See U.S. Const. amend. V; Kan. Const. Bill of Rights, § 10.

*The search warrant was supported by probable cause.*

Hensley argues the district court erred in failing to suppress the evidence discovered in his home because the affidavit in support of the warrant did not provide a substantial basis for the probable cause determination. Specifically, Hensley asserts much of the affidavit's information was stale and of limited value and the two recent tips lacked credibility and should not have been considered. The Court of Appeals panel summarily rejected Hensley's arguments, finding "a substantial evidentiary basis" for the probable cause determination. *Hensley*, 2010 WL 3211709, at *6.

### Standard of review

In reviewing whether an affidavit supplies probable cause, a judge "considers the totality of the circumstances presented and makes a practical, common-sense decision whether a crime has been committed or is being committed and whether there is a fair

probability that contraband or evidence of a crime will be found in a particular place." *State v. Hicks*, 282 Kan. 599, 613-14, 147 P.3d 1076 (2006). In *Hicks*, we discussed the role of the court reviewing the probable cause determination:

"When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." 282 Kan. 599, Syl. ¶ 2.

### The challenged affidavit

The challenged probable cause affidavit primarily consisted of six pieces of information. Of those six, three related to events occurring 2 years prior to the search warrant's execution, another was a juvenile adjudication over a decade old, and two were recent informant tips. As relevant here, the affidavit provided:

"On January 20, 2005, agents of the I-135/I-70 [Drug Task Force] assisted the Kansas Bureau of Investigation with a search warrant at the residence of Tyler Barton . . . for the sale of marijuana. During the search a large amount of marijuana was located. The baggies containing marijuana were checked for fingerprints and the fingerprint of Michael Hensley was located on a bag containing marijuana. At the time of the search warrant, Michael Rae Hensley was living across the hall from Barton.

"Investigator Mangels checked Hensley through the local computer and saw that he had visited Christian Axtell at the Saline County Jail on December, 19, 2004. Drug Task Force Agents had arrested Axtell at his residence on December 17, 2004 while in possession of approximately a pound of marijuana.

"On July 29, 2005, Officer Londono spoke with Justin David Banks. Banks advised that Michael Hensley was his marijuana dealer from about a year ago. Banks reported that Hensley had driven by him and told Banks that Banks owed Hensley money from a year ago. Banks advised that the owed money was for 2 ounces of marijuana which Banks had been arrested for the previous year. Hensley told Banks that if he did not pay his drug debt that Hensley would have someone 'hollar' at him for it.

"On Friday, April 13, 2007, Lt. Sweeney received a call from an unknown female wanting to provide information about a possible house where narcotics dealing was occurring. The caller advised that there is a lot of traffic coming and going from 643 Jaran, Salina, Saline County, Kansas. The caller stated that there are two males that live at the residence and she only knows one of them by the name of 'Mike.'

"On April 16, 2007, Investigator Hogeland was contacted by Crystal Post, former girlfriend to Michael Hensley. Crystal Post advised they [sic] knew Michael Hensley personally and that she had physical confrontations with him in the past and has been threatened before.

"Crystal Post stated that she was at Hensley's residence . . . on April 15, 2007. While at the residence, she observed several pounds of marijuana and a large amount of money hidden in the freezer of the residence. Crystal Post had been told by Hensley that he keeps the marijuana and money in the freezer because he had heard that drug dogs can't alert to items in the freezer.

"Crystal Post has also been told by Hensley that he has a .380 cal handgun. The subject is also aware that Hensley has a special hiding place in his bedroom closet. Crystal Post said that Hensley's bedroom is in the basement and in the closet in his room is access to a crawl space. Crystal Post advised that Hensley places his drug proceeds in his checking account but she has seen $4,000 in cash at the apartment before.

. . . .

"A check of Hensley's criminal history indicates that Hensley was convicted of [possession of] depressants/stimulants/hallucinogenics/steroids in Ellsworth County on January 13, 1997."

*Potentially stale information*

Hensley contends four of the items in the affidavit are stale and should not have factored into the probable cause determination made in April 2007: (1) his 1997 juvenile adjudication for possessing controlled substances; (2) his December 2004 visit with an inmate who was arrested for possession of marijuana; (3) officers' January 2005 discovery of Hensley's fingerprint on a baggie of marijuana found in an apartment across the hall from Hensley's apartment; and (4) the July 2005 statement from an identified man claiming Hensley was his marijuana dealer in 2004.

Stale information is information that no longer informs whether there is a fair probability that evidence of a crime will be found at a particular place because sufficient time has elapsed between when the informant acquired the information or an event occurred and when officers act on the information. See *Hicks*, 282 Kan. at

616 (finding drug history occurring 6 years before warrant was issued to be "extremely stale" and concluding that, without more, it did not provide probable cause); *State v. Probst,* 247 Kan. 196, 203, 795 P.2d 393 (1990) (concluding 15-month old conviction, "without more, would undoubtedly be too stale" to support probable cause). The amount of time that must lapse before information regarding a crime becomes stale is a particularized inquiry that takes into account the facts and circumstances of each case. *State v. Jacques,* 225 Kan. 38, 42, 587 P.2d 861 (1978); see also *United States v. Mathis,* 357 F.3d 1200, 1207 (10th Cir. 2004) (finding nature of criminal activity, length of activity, and nature of property to be seized determinative of whether dated information remains probative).

Here, Hensley's decade-old juvenile adjudication for possession of "depressants/stimulants/hallucinogenic/steroids" is unquestionably stale and lacking in probative value. And Hensley's visit some 2½ years prior to the search of his home to an inmate at the local jail who had been arrested for marijuana possession, which, at its best, is of questionable relevance, suffers from the same infirmity.

The two other pieces of information challenged by Hensley as stale, however, present a closer question. Arguably, the fact that officers discovered a bag of marijuana containing Hensley's fingerprints at an apartment across the hall from Hensley's apartment approximately 20 months before the warrant was executed on his home and the fact that an individual named in the affidavit reported in July 2005 that Hensley had been his marijuana dealer in 2004 have some probative value. Specifically, this information connects Hensley with a continuing activity—selling marijuana—increasing the likelihood that Hensley might remain engaged in the same criminal activity. Considered together with the information discussed below, these items were not stale and could be relied on in the probable cause analysis.

*Informant tips*

The probable cause affidavit also included two recent tips, one from an unidentified informant who "advised that there is a lot of traffic coming and going from [the residence]" and the other from

Hensley's ex-girlfriend, Post, who provided specific information regarding Hensley's marijuana possession. Hensley urges us to reject both tips because the affidavit contains no information regarding either informant's credibility.

Because " '[i]nformants' tips, like all other clues . . . , may vary greatly in their value and reliability,' " the probative value of a tip is determined using the totality of the circumstances as articulated in *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 32 L. Ed. 2d 612 [1972]). Before *Gates*, courts took a two-pronged approach to informant tips, with the first prong focusing on the person's basis of knowledge—the means by which the informant acquired the information—and the second prong focusing on the person's veracity—or evidence of the informant's credibility and reliability. See *State v. Toler*, 246 Kan. 269, 272-73, 787 P.2d 711 (1990). Under the totality of the circumstances approach outlined in *Gates*, the informant's veracity and basis of knowledge remain relevant but do not have "independent status," meaning "a deficiency in one may be compensated for . . . by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233.

Here, the affidavit provides no information as to the unidentified informant's knowledge or veracity. Instead, the only information corroborated in the affidavit is that a "Michael" lived at the address where the informant said a "Mike" lived. Applying a totality of the circumstances analysis easily leads to the conclusion that the unidentified informant's tip is entitled to no weight. See *Hicks*, 282 Kan. at 615 (noting lack of value in unidentified, uncorroborated tip when affidavit contains no evidence of informant's veracity).

Hensley argues Post's tip is similarly worthless because the affidavit contains no information regarding her reliability and no corroborating information. Further, because of Post's tumultuous past relationship with Hensley, Hensley argues Post's tip should be more rigorously scrutinized.

While the affidavit contains no corroborating information about Post's reliability, other evidence provides an indicia of reliability. Post advised officers that the previous day she had personally ob-

served several pounds of marijuana and a large amount of money hidden in Hensley's freezer. Further, she described where Hensley slept, the caliber of gun he possessed, and the location of a secret hiding place in his home. She also identified herself, thereby subjecting herself to potential prosecution for false information. Based on the totality of the circumstances, these additional indicia of reliability entitled the court to rely on Post's tip. See *Gates*, 462 U.S. at 234 (noting that even if informant has questionable motives, tip is entitled to greater weight if informant provides detailed, firsthand description of incriminating items or events); *State v. Slater*, 267 Kan. 694, 700, 986 P.2d 1038 (1999) (holding that in context of reasonable suspicion analysis, tips are "favored" when informant is identified and can be held accountable for misinformation).

Hensley also argues Post had "a reason to give false information" and her questionable motives prohibited reliance on the information. But the cases Hensley cites concern informants motivated to provide information in exchange for leniency, a circumstance not present here. See *State v. Landis*, 37 Kan. App. 2d 409, 419, 156 P.3d 675 (concluding that where informant's statements were only evidence implicating defendant in drug sales and informant participated in crime under investigation, officers were required to independently corroborate informant's tip in order to establish probable cause for warrant), *rev. denied* 284 Kan. 949 (2007); *State v. Hendricks*, 31 Kan. App. 2d 138, 143-44, 61 P.3d 722 (2003) (noting that named informant is not entitled to presumption of reliability if informant is under investigation or has been implicated in another crime and hopes to gain leniency).

Further, Hensley overstates his argument. An informant's unexpressed, questionable motives do not necessarily prohibit reliance on information that informant supplies. See, *e.g., Massachusetts v. Upton*, 466 U.S. 727, 734, 104 S. Ct. 2085, 80 L. Ed. 2d 721 (1984) (finding that despite defendant's former girlfriend's desire to "burn" defendant, detailed information she provided regarding defendant's illegal activities supplied probable cause for warrant); *United States v. Callahan*, No. 03-50449, 125 Fed. Appx. 137, 139 (9th Cir. 2005) (unpublished opinion) (rejecting defendant's reliability argument regarding his ex-girlfriend's tip and concluding

"police could reasonably interpret the existence of [an antagonistic relationship] as providing the basis for [the informant's] knowledge, as well as a motive for reporting the information"); *United States v. Cooper*, No. 99-5633, 1 Fed. Appx. 399, 404 (6th Cir. 2001) (unpublished opinion) (noting possible motive of defendant's "angry wife" did not automatically render her statement unreliable, and finding probable cause existed in part based on detail informant provided).

Having fully reviewed the information supporting the affidavit, we must next consider whether the affidavit provided a substantial basis for the judge's probable cause determination. Although we have rejected some of the information as stale, we conclude the information regarding Hensley's prior drug dealing, his fingerprints on the baggie of marijuana found in the apartment across the hall from his apartment, and the specific and detailed information Post supplied presented a substantial basis to conclude the affidavit provided probable cause to support the warrant.

*We need not decide whether the district court erroneously denied Hensley compulsory process because the district court never denied Hensley's request.*

Next, Hensley argues the district court violated his right to compulsory process under the Sixth Amendment of the United States Constitution, § 10 of the Kansas Constitution Bill of Rights, and K.S.A. 22-3214 by failing to issue process in the form of a pick-up order to secure Post's appearance at trial.

The Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to "have compulsory process for obtaining Witnesses in his favor." U.S. Const. amend. VI; *accord* Kan. Const. Bill of Rights, § 10; *Washington v. Texas*, 388 U.S. 14, 18-19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). Neither of these clauses, however, creates an unfettered right to compulsory process; rather, the defendant "must at least make some plausible showing of how [the witness'] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982). K.S.A. 22-

3214 gives defendants the right to request compulsory process and trial courts the power to compel witnesses to appear. See *State v. Adams*, 218 Kan. 495, 502, 545 P.2d 1134 (1976) (concluding K.S.A. 22-3214 does not require court to issue compulsory process simply because it is requested by defendant).

In rejecting Hensley's argument, the Court of Appeals panel concluded Hensley failed to demonstrate Post's testimony would have been material. *Hensley*, 2010 WL 3211709, at *4. But it is unnecessary to address the materiality of Post's potential testimony because the district court never denied Hensley's request for additional compulsory process.

Instead, in response to Hensley's initial request for a pick-up order, the district court directed Hensley to first attempt to contact Post and even assisted Hensley's effort by accompanying Hensley's attorney in seeking assistance from Post's probation officer. Following these steps, Hensley never renewed his request for additional compulsory process and, consequently, the district court never ruled on whether Hensley was entitled to the order. Consequently, Hensley's claim of error fails.

*Hensley's convictions of possession of marijuana and possession of marijuana with no tax stamp violate K.S.A. 21-3107(2)(b) and the Double Jeopardy Clauses.*

Finally, Hensley argues that his convictions of possession of marijuana with no tax stamp and possession of marijuana are multiplicitous and violate the Double Jeopardy Clauses of the United States and Kansas Constitutions and K.S.A. 21-3107(2)(b). See U.S. Const. amend. V; Kan. Const. Bill of Rights, § 10; K.S.A. 21-3107(2)(b). The Court of Appeals disagreed and affirmed both convictions.

Hensley acknowledges that this court has previously held that conviction of both possession of marijuana and possession of marijuana with no tax stamp is permissible. See *State v. Berberich*, 248 Kan. 854, 862, 811 P.2d 1192 (1991); *State v. Johnson*, 31 Kan. App. 2d 687, 691, 71 P.3d 481 (2003) (concluding possession of marijuana and possession of marijuana without a tax stamp are not multiplicitous), *rev. denied* 276 Kan. 972 (2003). But since that

holding, this court altered its multiplicity analysis in *State v. Schoonover*, 281 Kan. 453, 133 P.3d 48 (2006), and Hensley asks us to revisit our earlier conclusion in light of that decision. We agree that it is appropriate to revisit our earlier holding. See *Agostini v. Felton*, 521 U.S. 203, 235, 117 S. Ct. 1997, 138 L. Ed. 2d 391 (1997) (recognizing that stare decisis does not prohibit court's acknowledgement of recent legal developments).

To resolve this issue, we consider the interplay between the Fifth Amendment to the United States Constitution, § 10 of the Kansas Constitution Bill of Rights, and K.S.A. 21-3107(2)(b). Our review of double jeopardy and multiplicity challenges under these provisions is unlimited. *State v. Appleby*, 289 Kan. 1017, 1026, 221 P.3d 525 (2009).

Both the United States and Kansas Constitutions prohibit a criminal defendant from being "twice put in jeopardy," and although the language of the two provisions is not identical, we have interpreted the Kansas and federal provisions as providing the same protection. See U.S. Const. amend. V; Kan. Const. Bill of Rights, § 10; *Schoonover*, 281 Kan. at 493. In part, these clauses prohibit a court from imposing multiple punishments under different statutes for the same conduct in the same proceeding when the legislature did not intend multiple punishments. See *Schoonover*, 281 Kan. at 493 (referring to these cases as "multiple description cases" cases and noting the Double Jeopardy Clauses also protect against second prosecution for same offense after either acquittal or conviction).

In *Schoonover*, this court outlined the two-step double jeopardy analysis. First, the court determines whether the convictions arose from the same conduct. Second, the court considers whether by statutory definition there are two crimes or only one. 281 Kan. at 496. Under United States Supreme Court precedent, this second question is answered by using the same-elements test. Under that test, if each statute contains an element not found in the other statute, presumably the legislature intended punishment for both crimes. See 281 Kan. at 467-71. The same-elements test, however, is merely a rule of construction that courts use to divine legislative intent, and courts may turn to legislative history to discern whether

the legislature intended to punish the same conduct under two statutes. See *Albernaz v. United States*, 450 U.S. 333, 340, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981) (discussing legislative history and finding no evidence Congress intended to punish both crimes).

K.S.A. 21-3107(2)(b) is essentially the inverse of the same-elements test as it prohibits a defendant from being convicted of both a greater and lesser crime, and defines a lesser crime as "a crime where all elements of the lesser crime are identical to some of the elements of the crime charged." See *State v. Freeman*, 236 Kan. 274, 281, 689 P.2d 885 (1984) (explaining that provisions contained in K.S.A. 21-3107 were enacted in order to implement and define the constitutional guarantees of the Double Jeopardy Clause). Thus, while the same-elements test creates a presumption the legislature did not intend multiple punishments—a presumption that can be overridden by legislative history—K.S.A. 21-3107(2)(b) clearly specifies a circumstance in which our legislature did not intend cumulative punishment, removing the need to turn to legislative history. See *State v. King*, 297 Kan. 955, 971-72, 305 P.3d 641 (2013) (courts turn to legislative history only when statute is not plain and unambiguous). Accordingly, K.S.A. 21-3107(2)(b) supplants the same-elements test—either test results in the same outcome for the defendant—and removes the need to turn to legislative history to divine legislative intent.

Before we consider the merits of Hensley's argument under our legislative framework, we note that both K.S.A. 21-3107 and the Double Jeopardy Clauses require reversal of both the conviction and sentence if the legislature did not intend multiple punishments. See K.S.A. 21-3107(2) (providing defendant can be convicted of only crime charged or lesser included crime); *Ball v. United States*, 470 U.S. 856, 865, 105 S. Ct. 1668, 84 L. Ed. 2d 740 (1985) (holding that double jeopardy prohibits both convictions even if second conviction results in no greater punishment, because conviction has "potential adverse collateral consequences" such as social stigma and potential of increased punishment under recidivist statute); see also *Schoonover*, 281 Kan. at 493 (indicating that § 10 of Kansas Constitution Bill of Rights provides same protection as Fifth Amendment).

Hensley argues the district court violated the Double Jeopardy Clauses by allowing him to be convicted of both simple possession of marijuana and possession of marijuana without a tax stamp. The State does not dispute that the two convictions arose from the same conduct; thus, the only remaining question is whether under K.S.A. 21-3107(2)(b) possession of marijuana with no tax stamp and possession of marijuana are a greater and a lesser included crime.

Hensley argues that all of the elements of the simple possession charge are found in the possession of marijuana with no tax stamp charge, and the State appears to agree. K.S.A. 79-5208 provides: "[A] dealer distributing or possessing marijuana or controlled substances without affixing the appropriate stamps, labels or other indicia is guilty of a severity level 10 felony." Simple possession is made unlawful at K.S.A. 65-4162(3): "[I]t shall be unlawful for any person to possess or have under such person's control . . . [a] hallucinogenic drug," including marijuana.

Although the parties appear to agree that every element of a possession of marijuana charge is also found in a possession of marijuana with no tax stamp charge, the Court of Appeals panel decided otherwise, holding that because a "person" is guilty of a possession of marijuana charge and a "dealer" is guilty of possession of marijuana with no tax stamp, the possession of marijuana charge contains an element not found in the tax stamp charge. *Hensley*, 2010 WL 3211709, at *9.

In reaching this conclusion, the Court of Appeals overlooked the statutory definition of a "dealer" as *"any person* who, in violation of Kansas law, manufactures, produces, ships, transports or imports into Kansas or in any manner acquires or possesses more than 28 grams of marijuana." (Emphasis added.) K.S.A. 79-5201(c). Because a "dealer" is necessarily a "person," proving either possession of marijuana or possession of marijuana with no tax stamp requires the State to prove that a "person," *i.e.*, the defendant, possessed marijuana.

Despite the State's seeming concession that all of the elements of the offense of possession of marijuana are found in the offense of possession of marijuana with no tax stamp affixed, the State nevertheless argues "it is clear" the legislature intended to punish

both offenses. But the State points to nothing to substantiate this supposed clarity. And, as discussed, we need not speculate or comb legislative history to divine legislative intent because the legislature clearly expressed that intent in K.S.A. 21-3107(2)(b). Because possession of marijuana is a lesser included offense of possession of marijuana with no tax stamp, K.S.A. 21-3107(2)(b) instructs our conclusion that the legislature did not intend to punish both crimes when they arise from the same conduct.

We conclude Hensley's convictions of possession of marijuana and possession of marijuana with no tax stamp met both prongs of the double jeopardy test—*i.e.*, they arose from the same conduct, and by statutory definition they constituted a single crime in that they violated K.S.A. 21-3107(2)(b)'s prohibition against a person being convicted of both a greater and lesser crime. Accordingly, we reverse Hensley's conviction and sentence for possession of marijuana.

The judgments of the Court of Appeals and district court are affirmed in part and reversed in part.