NOT DESIGNATED FOR PUBLICATION

No. 117,011

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KIRK R. WARREN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Greenwood District Court; MICHAEL E. WARD, judge. Opinion filed June 29, 2018.
Affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GREEN and MCANANY, JJ.

PER CURIAM: Kirk R. Warren appeals his convictions of six counts of unlawful distribution of a controlled substance and one count of unlawful possession of drug paraphernalia. He claims the search warrant application was insufficient for obtaining the search warrant that led to the discovery of evidence of these crimes. He claims the district court should have suppressed the evidence collected during the search of his home. He also claims that the district court erred in instructing the jury.

1

*Factual and Procedural History*

This all began when the Greenwood County Sherriff's Department suspected that Warren was involved in drug dealing out of his house in Eureka. Sergeant Jason Myers conducted a trash pull from the trash container outside Warren's house and found a syringe, a white pill, a piece of a drinking straw that was red in color, a wooden stick that was burnt on one end and red in color, a clear zipper sandwich bag with one corner torn off, and prescription drug information sheets. In a second trash pull Myers found another syringe, a piece of aluminum foil burned on both sides with some unidentified residue, and mail addressed to Warren.

Myers conducted surveillance of Warren for seven months, during which he observed known drug offenders frequenting Warren's home.

Robin Davidson volunteered to help Myers with the investigation by being a confidential informant. Davidson, who was on probation, hoped his cooperation would result in some leniency on one of his charges. He also hoped that becoming an informant would help him stop using drugs. Davidson provided a list of people that he knew dealt drugs. Warren was on the list.

Myers supervised a series of controlled purchases of drugs from Warren. Before each of these transactions, Davidson was strip-searched to make sure he was not carrying drugs or other contraband. Myers gave Davidson bills to use in purchasing the drugs. Myers had recorded the serial numbers of the bills. After each buy, Davidson gave the officers the drugs he had purchased and was again subjected to a strip search. In the fall of 2015, Davidson made three drug purchases from Warren. During this period, Davidson tested positive for methamphetamine, which caused Myers to keep a closer eye on him.

In December 2015, Myers applied for a search warrant based on the assertion that there was probable cause to believe that Warren was involved in the distribution of methamphetamine and prescription drugs, possession of drug paraphernalia, and possession of stolen property at his home in Eureka. For support, Myers cited the items found in the two trash pulls, his surveillance of Warren's residence, Davidson's controlled buys, and other information Davidson provided. Myers also cited Warren's violent nature as demonstrated by his criminal history as support for a no-knock warrant.

The local magistrate approved the warrant, and Myers executed the warrant that same day. Myers found, among other things, methamphetamine, prescription drugs, and drug paraphernalia at Warren's house. The methamphetamine he found was in Ziploc bags and weighed at least 3.54 grams. Myers also found a container of unused plastic baggies, unused plastic syringes, a bag of used syringes, metal spoons and pipes, a pill bottle with Warren's name on it, a scale, and narcotic pills. The search also yielded $80 in cash that had the same serial numbers as the money Myers had given Davidson for one of the purchases.

Before trial Warren moved to suppress the evidence found during the search. He claimed the affidavit used to support the search warrant did not contain enough reliable information from which the magistrate could find probable cause for the search. He argued the stuff found in his trash did not support a finding of probable cause, the affidavit did not establish Davidson's credibility or the credibility of the controlled buy process that was used, and did not specify what was found in the surveillance of Warren's house and when it was found. The court found that while the affidavit was not perfect, considering the facts as a whole there was probable cause to issue the warrant.

At trial, the search warrant evidence was introduced over Warren's objection. At the conclusion of the evidence the court, over Warren's objection, included in its jury instructions the following:

"In Count 5, the defendant is charged with unlawfully possessing a controlled substance, namely methamphetamine, with intent to distribute. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:

"1. The defendant possessed methamphetamine.

"2. The defendant did so with the intent to distribute the methamphetamine.

"3. The quantity of methamphetamine possessed was at least 3.5 grams but less than 10 grams.

"4. This act occurred on or about the 7th day of December, 2015, in Greenwood County, Kansas.

"The term distribute as used in this instruction means the actual transfer of an item from one person to another. Distribute includes sale, offer for sale, or any act that causes an item to be transferred from one person to another.

"A defendant acts with intent when it is his desire or conscious objective to do the act complained about by the State.

"If you find the defendant possessed 3.5 grams of methamphetamine, you may infer that the defendant possessed with intent to distribute. You may consider the inference along with all the other evidence in the case. You may accept or reject it in determining whether the State has met the burden of proving the intent of the defendant. This burden of proof never shifts to the defendant."

The jury found Warren guilty of one count of distribution of methamphetamine on October 3, 2015; one count of distribution methamphetamine on October 12, 2015; one count of possessing more than 1 gram but less than 3.5 grams of methamphetamine with the intent to distribute on December 5, 2015; one count of possessing more than 3.5 grams but less 10 grams of methamphetamine with the intent to distribute on December 7, 2015; one count of possessing of drug paraphernalia; one count of possessing less than 10 dosage units of hydrocodone with the intent to distribute on December 7, 2015; and one count of possessing diazepam and lorazepam on December 7, 2015. The district court sentenced Warren to 122 months in prison and a consecutive 320-day jail sentence. Warren appeals.

4

*Evidence Obtained from Search of Warren's Home—Validity of the Search Warrant*

Warren claims the evidence obtained in the home search should have been suppressed because the warrant application failed to show probable cause to believe that he had committed a crime. He argues that the application lacked sufficient details about the controlled buys, the surveillance of his house, and about Davidson's reliability. Further, he claimed the information gathered in the trash pulls was stale and did not support a finding of probable cause.

In considering this claim, we normally review the district court's factual findings to determine whether they are supported by substantial competent evidence and review the district court's legal conclusions de novo. *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 (2013). But here, Warren agrees that the district court's factual findings were supported by substantial competent evidence, so our review is de novo on the remaining issue, the district court's legal conclusion.

We start with the presumption that the search warrant and the supporting affidavit were valid. Warren had the burden of showing that the search warrant was invalid. See *State v. Ames*, 222 Kan. 88, 92, 563 P.2d 1034 (1977). Here, Warren claims the warrant was invalid because the affidavit failed to demonstrate probable cause. In considering this claim, we look at the totality of the facts and circumstances described in the affidavit to determine whether there was a fair probability that evidence of a crime would have been found in Warren's house. In doing this, we give substantial deference to the magistrate who issued the search warrant. *State v. Hensley*, 298 Kan. 422, 427-28, 313 P.3d 814 (2013).

In determining whether the facts asserted in the affidavit are sufficient, we consider all the information in the affidavit as a whole. *State v. Malm*, 37 Kan. App. 2d 532, 543, 154 P.3d 1154 (2007).

5

*Staleness*

Warren contends that the information gathered during the trash pulls and his criminal history were stale at the time that Myers applied for the search warrant.

"Stale information is information that no longer informs whether there is a fair probability that evidence of a crime will be found at a particular place because sufficient time has elapsed between when the informant acquired the information or an event occurred and when officers act on the information." *Hensley*, 298 Kan. at 429.

There is no set time period after which information is considered to be stale. We look at all the facts and circumstances to resolve a claim of staleness. 298 Kan. at 430. When an affidavit establishes "the existence of a widespread, firmly entrenched, and ongoing narcotics operation . . . staleness arguments lose much of their force." *United States v. Hernandez-Escarsega*, 886 F.2d 1560, 1566 (9th Cir.1989).

The trash pulls at Warren's house were made about seven months before the search warrant affidavit. Further, there is no evidence that the items found in Warren's trash were related to illegal drug usage or distribution. None of the substances or residues found in the trash were tested for drugs. Used and unused syringes indicate the possibility of an insulin-dependent diabetic in the home as much as the possibility of an illegal drug user. The other items found were consistent with personal and lawful use. The items found in the trash pulls did not support the issuance of a search warrant.

Warren's criminal history covers a period from about 31 years before to about 6 months before the search warrant affidavit was prepared. Warren had one prior conviction in 2003 for a drug-related crime and eight arrests for drug-related offenses. Much of Warren's criminal history is too stale to be used to show that evidence of a crime was likely to be found in his house. But his arrests from 2014 and 2015 for drug-related

activities are not stale. They tend to show a nexus between Warren and the drug community during the relevant time period.

*Confidential Informant Information*

Warren claims that Davidson's information was unreliable. Relying on *State v. Powell*, 299 Kan. 690, 698, 325 P.3d 1162 (2014), he argues that Myers failed to cite in his affidavit any facts supporting Davidson's reliability or credibility.

We measure the probative value of Davidson's information by considering the totality of the circumstances. See *Hensley*, 298 Kan. at 431. In doing so we consider Davidson's veracity, the basis of his knowledge, and any other indicia of reliability. See *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). A deficiency in one category may be compensated for by a strong showing in one of the remaining categories. *Hensley*, 298 Kan. at 431.

Myers' affidavit did not state any evidence relating to Davidson's veracity. Also, Myers failed to disclose the fact that Davidson failed a drug test while acting as a confidential informant and the fact that Davidson was being investigated for dealing in methamphetamine. But in his affidavit, Myers stated that Davidson (identified only as "GWSO-009") personally observed the methamphetamine and personally completed the purchases. Davidson explained to Myers where Warren stored the various drugs in his house and in his car. He explained how Warren dealt in firearms and stolen property, which he traded for drugs. He described the various types of stolen property and where they could be found. Giving due deference to the magistrate who issued the search warrant and under a totality of the circumstances, Davidson's information was sufficiently reliable to form a basis for issuance of the search warrant.

*Information Relating to Controlled Buys*

Warren claims that the information relating to the controlled buys should not have been used in the magistrate's determination because Myers failed to state any information about the controlled buys in the affidavit. In support of his argument, Warren cites *State v. Mitchell*, 8 Kan. App. 2d 416, 417, 658 P.2d 1063 (1983), for the proposition that the affidavit needs to establish the reliability of a controlled buy.

In *Mitchell,* this court upheld the district court's order to suppress evidence because the affidavit did not discuss the details of the controlled buy. 8 Kan. App. 2d at 416-17. There, the affidavit merely stated that a controlled purchase of heroine was made from the occupant of the address. This court stated that the information that was missing included "who made the 'controlled purchase'; where the purchase was made; who witnessed the purchase; and if the purchase was not witnessed by an officer, what controls were imposed and by whom." 8 Kan. App. 2d at 417. The court noted that when the affiant acknowledges that the confidential informant was working with the affiant, the inference can be made that the affiant participated in the transaction. 8 Kan. App. 2d at 417.

We conclude that Myers' description of the controlled buys in his affidavit was sufficiently detailed to be considered by the magistrate in issuing the search warrant. Here, Myers' affidavit provided:  (1) the date of each controlled buy; (2) that Davidson made the purchases; (3) that he purchased the various drugs from Warren; (4) that the purchases were made at Warren's residence; (5) the weight of the materials purchased; (6) the nature of the drugs purchased; (7) that the first purchase was made with money provided by Myers and Sheriff Charles Bitler; (8) that the serial numbers of the bills used in this first purchase were recorded; (9) a description of the container used to store the methamphetamine obtained in the first purchase; (10) that a field test confirmed that the product obtained in this transaction was methamphetamine; (11) that Myers, deputies

from the Greenwood County Sheriff's Office, and KBI Special Agents were involved in the second purchase; (12) that the KBI provided the funds for the second purchase; (13) that pills obtained in the second purchase were determined to be oxycodone hydrochloride, which is a schedule two controlled substance; (14) that a field test of the white crystalline substance from the second purchase was positive for methamphetamine; (15) that Myers and deputies from the Greenwood County Sheriff's Office were involved in the third purchase and provided the cash for the purchase; (16) a description of the container for the drugs obtained in the third purchase; and (17) that audio recordings were made of the drug purchases.

*The Totality of the Facts and Circumstances*

Considering the facts and circumstances as a whole, we find that Warren had a history of being involved in the drug community as demonstrated by his arrest record. Davidson made controlled buys from Warren on specific dates at Warren's home. The materials he purchased from Warren during the controlled buys tested positive for methamphetamine and oxycodone, which are both controlled substances. The last purchase occurred only two days before Myers applied for the warrant. The informant gave precise locations of where Warren stored methamphetamine and the amount he saw while he was in Warren's home. During the last controlled buy, Davidson reported that Warren possessed approximately a half ounce of methamphetamine. The investigating officers recorded the audio conversation during the controlled buys, suggesting that they had monitored the purchases and had corroborated Davidson's stories. Taken as a whole, these assertions of fact provided a substantial basis for the magistrate's determination that there was a fair probability that evidence related to the distribution of methamphetamine would be found in Warren's home. The magistrate did not err in issuing the search warrant, and the district court did not err in admitting at trial the evidence obtained in the resulting search.

The State raises an alternative argument based on the good-faith exception to exclusionary rule as set out in *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 (1984). Based on our conclusion above, it is unnecessary to address this argument.

*Jury Instructions*

Warren claims the district court committed reversible error when it gave a jury instruction that failed to require the prosecution to prove that Warren had an intent to distribute 3.5 or more grams of methamphetamine.

In considering this claim, we first determine whether the issue was preserved for appeal. We then turn to the merits of the claim to determine its merits and, if meritorious, whether the district court's action prejudiced the defendant to the extent that a reversal is necessary. *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). In deciding whether an instruction was legally and factually appropriate, our review is unlimited. *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016). Because Warren did not make a specific objection on the record at the court's jury instruction conference, we apply the clear error standard. Under this standard, we will reverse only if Warren can firmly convince this court that the jury would have reached a different result without the error. *State v. Williams*, 295 Kan. 506, 515, 286 P.3d 195 (2012).

As a reminder, the jury instruction at issue stated the following:

"In Count 5, the defendant is charged with unlawfully possessing a controlled substance, namely methamphetamine, with intent to distribute. The defendant pleads not guilty. To establish this charge, each of the following claims must be proved:
"1. The defendant possessed methamphetamine.
"2. The defendant did so with the intent to distribute the methamphetamine.

10

"3. The quantity of methamphetamine possessed was at least 3.5 grams but less than 10 grams.

"4. This act occurred on or about the 7th day of December, 2015, in Greenwood County, Kansas.

"The term distribute as used in this instruction means the actual transfer of an item from one person to another. Distribute includes sale, offer for sale, or any act that causes an item to be transferred from one person to another.

"A defendant acts with intent when it is his desire or conscious objective to do the act complained about by the State.

"If you find the defendant possessed 3.5 grams of methamphetamine, you may infer that the defendant possessed with intent to distribute. You may consider the inference along with all the other evidence in the case. You may accept or reject it in determining whether the State has met the burden of proving the intent of the defendant. This burden of proof never shifts to the defendant."

Warren does not claim this instruction was factually inappropriate. His sole claim is that this instruction was not legally appropriate. Warren was charged under K.S.A. 2014 Supp. 21-5705. He argues that under this statute the jury was required to find that he possessed the drugs and had the intent to distribute them in order to sustain a conviction. He argues that the portion of the instruction that identifies the elements of the crime and states "[t]he quantity of methamphetamine possessed was at least 3.5 grams but less than 10 grams" should have stated "[t]he quantity of the methamphetamine possessed *with intent to distribute* was at least 3.5 grams." (Emphasis added.)

In *State v. Palmer*, No. 110,624, 2015 WL 802733, at *4 (Kan. App. 2015) (unpublished opinion), a panel of our court held:

"According to the plain language of K.S.A. 2014 Supp. 21-5705, the amount of the controlled substance *possessed* is the relevant inquiry for conviction and sentencing purposes. Contrary to [the defendant's] argument, the statute does not create a distinction between the amount possessed and the amount intended to be distributed. Rather, the severity level of the crime is based solely on the 'quantity of the material,' the 'number of

11

> dosage units,' or the 'number of plants cultivated.' K.S.A. 2014 Supp. 21-5705(d). The
> statute makes no mention of the quantity of the material intended to be distributed."

The court further noted that because the defendant possessed more than 3.5 grams of methamphetamine, under K.S.A. 2014 Supp. 21-5705(e)(2) there is an inference that the defendant had the intent to distribute the drug and, therefore, the State had no burden to prove the additional element of intent to distribute. 2015 WL 802733 at *4.

We find this language from *Palmer* to be persuasive. This jury instruction was legally appropriate. As the court noted in *Palmer*, the plain language of K.S.A. 2014 Supp. 21-5705 focuses on the amount of the controlled substance possessed. Here, there is no dispute that Warren possessed a total of more than 3.5 grams of methamphetamine. Therefore, under K.S.A. 2014 Supp. 21-5705(e)(2) the jury could infer that Warren had the intent to distribute.

Affirmed.