NOT DESIGNATED FOR PUBLICATION

No. 118,921

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JASON R. THATCHER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Clay District Court; JOHN F. BOSCH, judge. Opinion filed November 2, 2018.
Affirmed.

*Sam S. Kepfield*, of Hutchinson, for appellant.

*Richard E. James*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON and LEBEN, JJ.

PER CURIAM:  In this appeal, Jason R. Thatcher contests the constitutionality of a search of his home which led to the discovery of drugs and related paraphernalia which led to his convictions for possession of methamphetamine and possession of drug paraphernalia. He contends the district court should have suppressed the evidence obtained in the search which formed the bases for these convictions.

Thatcher's problems began when a neighbor, Jacqueline Mossburgh, called the police to report that Thatcher was discharging a gun at his home in Clay Center. Thatcher, a convicted felon, lived with two other individuals:  Evan Booth, who is also a

convicted felon, and Thatcher's girlfriend, Melissa Webb, who is not. Officer Harold Stellner responded and investigated Mossburgh's complaint. He interviewed Mossburgh and her boyfriend, Christopher Troy, who reported that this is a frequent occurrence. Stellner also interviewed neighbors Lisa Anderton, Patricia Snyder, and Chuck Loader who all confirmed that they had heard what they believed to be gunfire coming from Thatcher's home. They also reported hearing large fireworks-type explosions, some of which were louder than others. Mossburgh told Stellner that her ex-husband "fires off homemade pipe bombs" and had been with Thatcher in the past at Thatcher's home. One neighbor, Mary Ihnen, reported that Thatcher frequently shot off a gun, but she was afraid to report it because Thatcher's brother is the mayor of Clay Center.

Nine days after the conclusion of the investigation, the police obtained a search warrant from the local magistrate, who found probable cause to believe the crimes of felon in possession of a firearm, possession of explosives, and unlawful discharge of a firearm had been committed. The warrant allowed the police to search, among other things, in and around the residence and all portions of the property where firearms and explosive materials could be stored or hidden.

Officer Stellner executed the warrant that same day. In the master bedroom he found photos and documents indicating that this was the bedroom of Thatcher and Webb. All of Thatcher's belongings were on one side of the room and all of Webb's belongings were on the other. On Thatcher's side, the officer found a 36" x 24" x 24" cabinet next to pictures of Thatcher and his daughter and his daughter's birth certificate. Inside the cabinet the officer found a glass smoking pipe for methamphetamine and three plastic baggies with a white residue. The glass pipe later tested positive for methamphetamine.

Thatcher was charged with possession of methamphetamine and possession of drug paraphernalia. Before trial, Thatcher moved to suppress all evidence gathered during the search. He argued that the search was unlawful because (1) it exceeded the scope of

2

the search authorized by the warrant, (2) the long gun the police were supposed to be looking for could not have been found in the small bedroom cabinet, and (3) the warrant was issued based on insufficient probable cause.

The district court denied the suppression motion, and the case went to trial. At trial Thatcher renewed his objections to the admission of the evidence collected during the search of his home, and his objections were again overruled. The jury found Thatcher guilty as charged.

Thatcher appeals. He argues that the district court erred in denying his suppression motion because (1) there was no probable cause to issue the warrant and (2) the search of his home exceeded the scope of the search warrant.

The State bears the burden of proving the validity of a search and seizure. *State v. Overman*, 301 Kan. 704, 710, 348 P.3d 516 (2015). In our review of these claims we first review the district court's findings to see if they are supported by substantial competent evidence. In doing so, we do not reweigh the evidence or reassess the credibility of the witnesses. We review de novo the district court's ultimate conclusion not to suppress the evidence obtained in the search. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A search is deemed to be reasonable if an officer has obtained and properly executed a valid search warrant. A valid search warrant may only be issued "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Section 15 of the Kansas Constitution Bill of Rights provides identical

3

protection to the Fourth Amendment. *State v. Moralez*, 297 Kan. 397, 404, 300 P.3d 1090 (2013).

*Affidavit Validity*

Thatcher asserts that the information contained in the affidavit was unreliable because it was based on hearsay. But an affidavit in support of a search warrant may be based on hearsay so long as the affiant sufficiently alleges the veracity and the basis of knowledge of the declarant. *State v. Hicks*, 282 Kan. 599, 614, 147 P.3d 1076 (2006). Concerns over the veracity and basis of knowledge of a hearsay declarant fall by the wayside if "'an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him [or her] to criminal liability.' [Citation omitted.]" 282 Kan. at 614.

Here, the affidavit recounted the observations of Thatcher's neighbors—each identified by name—regarding the possible crimes of a felon possessing a firearm, possession of explosives, and the unlawful discharge of a firearm. No information was obtained by an anonymous informant. There is nothing to suggest that Thatcher's neighbors were anything other than observant and conscientious citizens doing their civic duty in reporting apparent criminal activity. Mossburgh told dispatch that her boyfriend, Christopher Troy, had seen "Jason Thatcher was shooting a gun off." Troy told dispatch that he saw someone "hanging out a window" at Thatcher's house fire several shots with a long gun. Statements from other neighbors were equally credible and confirmed Troy's statement. None was anonymous. Each was identified by name. Had they fabricated the story of the goings-on at Thatcher's home, they would have subjected themselves to criminal liability. Together they formed a proper basis for a finding of probable cause.

Nevertheless, Thatcher claims this information from the neighbors was stale by the time the warrant was issued and executed, nine days after the investigation.

4

Information is stale when so much time has elapsed between the statements forming the basis for the warrant and the officer acting on those statements that there is no longer "a fair probability that evidence of a crime will be found at a particular place." *State v. Hensley*, 298 Kan. 422, 429, 313 P.3d 814 (2013).

In considering whether information is stale, we consider four factors enumerated in *State v. Hemme*, 15 Kan. App. 2d 198, 203, 806 P.2d 472 (1991): (1) whether the criminal activity is continuous; (2) the time between the issuance of the warrant and the alleged criminal activity relied upon to establish probable cause; (3) the use of present or past tense verbs in the affidavit supporting the search warrant; and (4) the likelihood the contraband would be moved from the location of the proposed search.

"The amount of time that must lapse before information regarding a crime becomes stale is a particularized inquiry that takes into account the facts and circumstances of each case." *Hensley*, 298 Kan. 422, Syl. ¶ 2. Thus, when the object of a search includes items that are unlikely to have been destroyed in the interim, the time between the information and the search can be longer. See *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005). Firearms fall into this category. Information about the presence of firearms has been found not to be stale because possessors of firearms tend to keep them for long periods of time. See *United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008); *United States v. Singer*, 943 F.2d 758, 763 (7th Cir. 1991); *United States v. Lancaster*, 145 Fed. Appx. 508, 513 (6th Cir. 2005) (unpublished opinion). Here, the period between the investigation and the issuance and execution of the search warrant was only nine days. We conclude that, under these circumstances, the information about the prospects of firearms being found in Thatcher's home was not stale.

With respect to the possibility of explosives in the home, discharging some form of explosives was described in the present tense, apparently indicating that this was a

periodic and ongoing activity. The likelihood that evidence of this activity would be lost during the nine days between the police investigation and the execution of the warrant was small. We conclude that, under the circumstances, the information about the prospects of bomb-making materials being found at Thatcher's home was not stale.

Because the hearsay statements were reliable and the information provided by the informants was not stale, there was sufficient evidence in the affidavit to find probable cause.

*Scope of the Search*

Thatcher asserts that the officer went beyond the scope of the search warrant when he searched the small plastic cabinet and when he seized drugs which were not the object of the search.

If "objectively reasonable idicia present at the time of the search" reveal that an area could contain the evidence identified in the search warrant, a search is authorized and the evidence found in such place is lawfully discovered. *Patterson*, 304 Kan. 272, Syl. ¶ 3. Here, the warrant authorized a search for "[f]irearms, [p]ipe bombs, and [m]aterials for constructing pipe bombs." We interpret the scope of a warrant in a common-sense fashion rather than a hypertechnical fashion. 304 Kan. at 275. Reading this list in a common-sense manner, the term firearms includes hand guns, rifles, or shotguns; and the material for constructing pipe bombs includes fuses and gun powder. Some of these items are small enough to fit in the bedroom cabinet where the drugs and drug paraphernalia were found. Accordingly, the search of the bedroom cabinet was within the purview of the warrant.

But Thatcher contends that the warrant authorized a search for guns and bomb-making materials, not drugs. Nevertheless, as found in *State v. Galloway*, 232 Kan. 87,

6

91, 652 P.2d 673 (1982), items that are illegal in nature but not included in the warrant may be seized under the plain-view exception to the warrant requirement. In applying the plain-view exception, we consider whether (1) the officer was lawfully in the area to be searched, (2) the officer's discovery of the evidence was inadvertent, and (3) the incriminating character of the evidence was immediately apparent to the officer. 232 Kan. at 91.

Here, the search of the bedroom cabinet was for firearms and bomb-making materials. The officer was lawfully in the bedroom as a part of the search of the entire house as called for in the warrant. The officer's discovery of drugs and drug paraphernalia was inadvertent. The officer found these items in a cabinet he was searching in an attempt to find a handgun or bomb-making materials covered by the warrant. Finally, the incriminating character of these items was immediately apparent to the officer. He testified that based on his training and experience he immediately recognized their incriminating nature. Therefore, the plain-view exception applied, and the officer did not violate the scope of the warrant by seizing these items.

The district court did not err in denying Thatcher's suppression motion.

Affirmed.