NOT DESIGNATED FOR PUBLICATION

No. 125,356

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

ROGER LEE DEHART,
*Appellant.*


MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Oral argument held January 6, 2026. Opinion filed March 20, 2026. Affirmed.

*Kevin P. Shephard*, of Ralston, Pope & Diehl, LLC, of Topeka, for appellant.

*Jodi Litfin*, deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before SCHROEDER, P.J., MALONE and GARDNER, JJ.


PER CURIAM:  Roger Lee Dehart appeals his convictions after a bench trial for one count of possession of methamphetamine with intent to distribute, unlawful use of paraphernalia, and possession of marijuana. After Dehart's appellate counsel reviewed the record on appeal, he moved for a remand under *State v. Van Cleave*, 239 Kan. 117, 120-21, 716 P.2d 580 (1986), to determine whether Dehart's trial counsel had failed his duty to provide effective assistance of counsel. This court granted that motion.

1

After the evidentiary *Van Cleave* hearing, the district court concluded that Dehart's trial counsel was not ineffective. After careful review, we agree. We thus affirm Dehart's convictions and sentence.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of February 25, 2016, the Kansas Highway Patrol executed a no-knock search warrant on Dehart's residence and found drugs and paraphernalia in multiple locations. As Dehart had told officers, methamphetamine and marijuana were in multiple packages inside a red toolbox in the garage. Dehart was taken to the law enforcement center where he was interviewed again. During that interview he admitted that he had purchased methamphetamine to sell from several local sources, and he had made his last purchase—about 5 ounces of methamphetamine—about a week before the search.

The grand jury indicted Dehart of possession of over 100 grams of methamphetamine with the intent to distribute, unlawful use of drug paraphernalia (manufacturing), and possession of marijuana.

Dehart retained Donald Hoffman as his counsel. Hoffman moved to suppress all evidence obtained from the search of his residence. Hoffman argued that the search warrant application was based on the uncorroborated statements of a "confidential informant" (Jeffrey Brier), making the affidavit unreliable and lacking in probable cause. He argued that the warrant could not pass constitutional scrutiny because the law enforcement officer who had submitted the warrant (Trooper Michael Starr) had omitted from the application that he had released, instead of charged, Brier. Hoffman added that the good-faith exception to the warrant requirement did not apply because Brier was

2

unreliable and the Trooper had intentionally omitted material information from the warrant application.

The district court disagreed and ruled that the search warrant application contained sufficient probable cause to justify the search of Dehart's residence. Alternatively, the district court found that the good-faith exception to the warrant requirement applied because even if the affidavit lacked a substantial basis for probable cause, it provided some indicia of probable cause, making it reasonable for the Trooper to rely on the judge's issuance of the warrant.

Dehart moved for more findings, but the district court again found no evidence that the judge who had approved the warrant had been deliberately misled during the application process. The district court found no evidence that Starr had made a deal or had decided not to charge Brier when he applied for a warrant. The district court likewise found nothing to negate application of the good-faith exception.

Hoffman later moved the district court to reconsider its ruling on the motion to suppress because he had not been given information about the County's and the Kansas Highway Patrol's protocols on the use of informants. In anticipation of the hearing on that motion to reconsider, Hoffman issued subpoenas to several people, including Trooper Starr, Brier, and the evidence custodian at the Kansas Highway Patrol. But the State objected to the motion's reconsideration and to Dehart's attempt to present more evidence. The State also argued that no evidentiary hearing was warranted because Dehart had not made the preliminary showing required by *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)—false or deliberately omitted information from the warrant application. After arguments, the district court affirmed its denial of the motion to suppress, finding no evidence showed if or when Starr had made any promises to informant Brier.

3

The district court later held a bench trial on Dehart's charges. Before taking evidence, the district court swore Dehart in and asked about his desire to waive his right to a jury trial. After inquiry, the district court found that Dehart had voluntarily waived his right to a jury trial. The State then presented its case, yet Brier did not comply with the subpoena to appear. So at the close of the State's case, the district court issued a material witness warrant for Brier's failure to comply with the subpoena and continued the proceedings to a later date.

Brier appeared on the later trial date, yet his attorney stated that Brier intended to invoke his Fifth Amendment to the United States Constitution right against self-incrimination if called as a witness. The State told the district court that it was not willing to offer immunity to Brier in exchange for his testimony at Dehart's trial. Brier did not testify.

Dehart testified in his own defense. He stated that he knew Brier, and he had received a text from him the night before his residence was searched in February 2016. Brier had texted that he had been pulled over by the police and was "probably going to jail." Brier had told Dehart that Brier's father had found "a pipe" in Brier's garage. Brier asked Dehart to go and get something out of Brier's trashcan so his father would not find it. Dehart complied by taking a bag from Brier's trashcan and putting it in his garage. Dehart did not know what was in the bag, but he assumed it was something that would get Brier in trouble with his parents, with whom Brier lived.

Yet during cross-examination, Dehart did not deny selling narcotics. The district court judge found him guilty as charged. Dehart was sentenced to 154 months in prison—the low number on the applicable grid box.

Dehart timely appealed and remains free on an appeal bond. Dehart's appellate counsel then moved this court to remand Dehart's case for the district court to consider

4

whether he received ineffective assistance of trial counsel under *Van Cleave*. That motion argued that Hoffman was ineffective in five ways: (1) he failed to raise a constitutional speedy trial argument; (2) he failed to properly litigate the challenge to the search warrant of Dehart's residence; (3) he failed to counsel Dehart on his jury trial waiver; (4) he failed to communicate with and to advise Dehart on plea negotiations; and (5) he failed to properly litigate the motion for a departure sentence.

This court granted that motion and remanded the case to the district court. At the *Van Cleave* hearing, many witnesses testified, including Dehart, Hoffman, and Starr. The district court later issued a detailed order denying all claims that Hoffman was ineffective.

On appeal, Dehart raises the same five arguments of ineffective assistance of counsel that he did before the district court.

*Standard of Review and Legal Framework*

The Sixth Amendment to the United States Constitution guarantees in "all criminal prosecutions" that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right to counsel is the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Gonzales*, 289 Kan. 351, 357, 212 P.3d 215 (2009); *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). This Sixth Amendment right to counsel is made applicable to the states by the Fourteenth Amendment to the United States Constitution. *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012).

In reviewing a district court's factual findings on claims of ineffective assistance of counsel, we use a substantial competent evidence standard. We review the district court's

legal conclusions by applying a de novo standard of review. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022). "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015) (quoting *State v. Bird*, 298 Kan. 393, 399, 312 P.3d 1265 [2013]). We do not reweigh evidence, make credibility determinations, or resolve conflicts in evidence; we give great deference to a district court's factual findings. *Talkington*, 301 Kan. at 461.

Substantively, we analyze claims of ineffective assistance of trial counsel under the two-part test articulated in *Strickland*, 466 U.S. at 694, which was adopted by the Kansas Supreme Court in *Chamberlain*, 236 Kan. at 656-57. Under this test, the movant must show that trial counsel's performance was deficient and that a reasonable probability exists that, absent trial counsel's unprofessional errors, the result would have been different. *Evans*, 315 Kan. at 217-18. "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.'" *Smith v. Robbins*, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (quoting *Strickland*, 466 U.S. at 697).

To establish deficient performance under the first prong, the movant must show that trial counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires us to make every effort to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. *Evans*, 315 Kan. at 218. A court considering a claim of ineffective assistance of counsel must strongly presume that trial counsel's conduct fell within the wide range of reasonable professional assistance. Thus the movant must overcome the strong presumption that, under the circumstances, counsel's action might be

considered sound trial strategy. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

Under the second prong, the movant must show that trial counsel's deficient performance was prejudicial. To establish prejudice, the movant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. So a court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. 313 Kan. at 486. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Evans*, 315 Kan. at 218.

Ineffective assistance of counsel does not turn on what is "prudent or appropriate, but only what is constitutionally compelled." *United States v. Cronic*, 466 U.S. 648, 665 n.38, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

With these principles in mind, we now consider Dehart's five claims of ineffectiveness of his trial counsel.

WAS DEHART'S TRIAL COUNSEL INEFFECTIVE IN CHALLENGING THE SEARCH WARRANT?

We first address Dehart's claim that Hoffman was deficient for not filing a motion and affidavit for an evidentiary hearing under *Franks*, 438 U.S. 154. He also argues that Hoffman should have litigated the motion to suppress differently and been more diligent in securing Starr's testimony.

*Failing to secure Starr's testimony earlier is harmless.*

We disagree that Hoffman was ineffective for not getting Starr to testify at the motion to suppress hearing or at trial. True, Starr did not testify at the hearing on the motion to suppress, although he was present and willing to testify, nor did Starr testify at trial. Hoffman told the district court that he was unable to subpoena Starr—he had been advised that Starr was no longer in the country. The State told the district court that it believed Starr was on a military deployment at a confidential base, that he had limited access to email, and it did not know when he would be available. But the record does not reflect anything that Hoffman should have done that he failed to do to secure Starr's presence. His performance was adequate.

But even if Hoffman's performance was deficient in this respect, Dehart fails to show prejudice. Starr testified to relevant facts during the *Van Cleave* hearing—including about the search warrant affidavit and his contacts with Brier. Thus the district court heard the same testimony from Starr at the *Van Cleave* hearing that it would have heard from Starr had he testified during the suppression hearing or at trial. Dehart fails to show that if Starr had testified earlier, the district court's opinion on the motion to suppress or at trial would have been any different. Thus, Dehart fails to show that Hoffman was ineffective on this basis. He has not shown that the outcome of the motion—be it a *Franks* motion or the suppression motion filed by Hoffman—would have been any different.

*No* Franks *motion was necessary or would have succeeded.*

We next address Dehart's argument that Hoffman should have filed a *Franks* motion. When a defendant argues an attorney was ineffective for failing to file a particular motion, the first prong under *Strickland* requires proof that the motion was likely to succeed. See *State v. Thompson*, 293 Kan. 704, 717, 270 P.3d 1089 (2011);

8

see also *Khalil-Alsalaami*, 313 Kan. at 500. If the motion was not likely to succeed, then counsel was not ineffective for failing to pursue it because there is no prejudice. 313 Kan. at 500 (counsel's decision to not file a motion must be objectively unreasonable).

We presume the affidavit underlying a search warrant is valid.

"[T]here is a presumption of validity with respect to an affidavit supporting a search warrant and generally a party against whom a search warrant is directed may not dispute the matters alleged in the supporting affidavit or application. *Franks v. Delaware*, 438 U.S. at 171.

"An exception to the above general rule is recognized if the challenger's attack is supported by allegations and an offer of proof under oath that the affidavit or application for search warrant contains material statements of deliberate falsehood or of reckless disregard for the truth." *State v. Jacques*, 225 Kan. 38, 43-44, 587 P.2d 861 (1978).

Unlike a probable cause determination, which is limited to the allegations contained within the probable cause affidavit, a district court conducting a *Franks* hearing must be able to consider matters outside the four corners of the affidavit to effectively determine the veracity of those statements. *State v. Beal*, No. 90,150, 2004 WL 1683108, at *3 (Kan. App. 2004) (unpublished opinion). Dehart contends that a *Franks* hearing would have shown that Starr released Brier from custody and decided not to charge him with drug related offenses because Brier agreed to give him information about Dehart, who sold drugs. He argues that Starr deliberately misled the warrant judge because Brier was "getting a fix" which made him an unreliable witness, and since the "fix" was not revealed in the warrant application, the probable cause finding was tainted.

We begin our analysis by noting that a motion to suppress may serve the same purpose as a *Franks* hearing:

> "While [the defendant] never specifically asked for a *Franks* hearing, the motion to suppress was, in effect, a *Franks* hearing. A *Franks* hearing is simply an evidentiary hearing on a motion to suppress evidence based on a challenge to the facts included or omitted from a search warrant. See *State v. Jacques*, 225 Kan. 38, 44, 587 P.2d 861 (1978). There is no particular remedy if the defendant proves the need for a hearing. After the hearing, the trial court still must decide if the facts showed probable cause to issue the warrant. See 225 Kan. at 44." *State v. Bowen*, 27 Kan. App. 2d 122, 132, 999 P.2d 286 (2000).

Because Hoffman alleged in the motion to suppress that Starr had omitted from the search warrant application facts that would have defeated probable cause, the hearing on the motion to suppress was, in effect, a *Franks* hearing.

Moreover, Dehart has failed to show that the affidavit contained material statements of deliberate falsehood or reckless disregard for the truth, as *Franks* requires. True, when the search warrant application was made, Starr did not state that Brier had been released from custody. Nor did Starr testify that Brier gave him information in exchange for his release from custody. To the contrary, Starr testified that he had released Brier from custody because booking him into jail was "not required." Starr did not recall if he had released Brier before or after the search warrant was obtained—he believed it was after the search warrant was signed, but before it was executed. He did not believe he had made any promises of release either before or after the warrant was signed. Starr did not submit paperwork to a prosecuting authority about Brier's drug possession and did not recall whether he wrote a report that would have been submitted. But no evidence of any deal was shown.

The district court held that Starr's omission was not motivated by deceit, was not intentional, and did not reflect a pattern or practice of law enforcement to omit details about informants. Our review of the facts shows substantial competent evidence supporting this finding. Thus Hoffman had no factual basis for filing a *Franks* motion.

10

Dehart relies on *State v. Landis*, 37 Kan. App. 2d 409, 156 P.3d 675 (2007). But our facts are unlike those in *Landis*, where the affiant admitted he had deliberately omitted from the application the leniency given to the informant in exchange for his information.

*The affidavit contained sufficient probable cause.*

We next address Dehart's contention that the search warrant affidavit lacked probable cause. K.S.A. 22-2502(a) directs that a search warrant shall be issued only when the statements in support of that warrant allege "facts sufficient to show probable cause that a crime has been, is being or is about to be committed" and "particularly describe[ ] a person, place or means of conveyance to be searched and things to be seized." Thus,

> "'[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [or her], including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Fisher*, 283 Kan. 272, 300, 154 P.3d 455 (2007).

The burden of proving that the search and seizure was lawful and based upon probable cause rests on the prosecution. *State v. Pearson*, 234 Kan. 906, 920, 678 P.2d 605 (1984). When, as here, a defendant challenges the affidavit in support of an application for a search warrant, the appellate court does not determine, as a matter of law, whether probable cause existed; it simply analyzes whether the "'affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched.'" *State v. Adams*, 294 Kan. 171, 180, 273 P.3d 718 (2012). We thus conduct our own review of the affidavit's sufficiency using this deferential standard.

Starr set out these facts in support of his affidavit:

"On 02/23/2016 at about 1908 hours, I was patrolling on US-59 highway about milepost 174 when I observed a vehicle traveling northbound. The vehicle shined their bright lights at my patrol vehicle as well as having falsified registration.

"I initiated the traffic stop at milepost 174 on US-59 northbound. The driver identified as Jeff W. Brier who is my criminal informant was placed in custody and I conducted a search of the vehicle.

"I found and seized a small sized clear plastic bag with a large crystal based on my training and experience to be methamphetamines in the center console. I found and seized a clear plastic bag with smaller crystals based on my training and experience to be methamphetamines in the driver side door. I found and seized several glass pipes in the center console based on my training and experience to be used to consume methamphetamines into the human body.

"My informant was transported to the Kansas Highway Patrol Troop B headquarters. I read Miranda to my informant using my agency issued Miranda Card at 2006 hours.

"The informant stated that Roger Dehart is a user of methamphetamines. The informant stated that Dehart is a dealer for methamphetamines. The informant stated that he has seen other people come to the house and buy methamphetamines from Dehart.

"The informant stated that the house was the south most house on NE Madison before you reach a cul-de-sac that reaches a dead end before reaching NE Morse St. The informant describes the house as a tan house single story structure with white trim. The informant took us to the house and showed us the fenced in area to the rear of the property used to access the garage where drug transactions take place.

"The informant stated he has been buying methamphetamines from Dehart for over a year, twice per week. The informant purchases l/l6th to 1/8th of an ounce at a time. The last time the informant purchased [m]ethamphetamines from Dehart 2/20/2016, Dehart had a quart size Ziploc bag full of methamphetamine and distributed it into a smaller quantity for the informant.

"The informant has seen in excess of 1 pound in Dehart's possession for distribution. The informant stated Dehart travels to Kansas City to buy [m]ethamphetamine. The informant stated that Dehart usually keeps the proceeds from the sale of [m]ethamphetamines on his person.

12

"The informant stated that there is a surveillance camera system with cameras on the premises pointing towards the front of the residence. The informant stated there are several handguns at the residence usually in the garage. The informant stated Dehart has a large collection of· knives in the structures. The informant stated Dehart has 2 dogs that are normally in the house.

"The informant has been arrested before for the possession of a controlled substance several times. Dehart has been arrested for multiple person Felonies including Aggravated Battery, Aggravated Assault, Domestic Battery as well as Possession of Marijuana and Methamphetamines with intent to distribute."

Dehart does not dispute that the affidavit clearly stated the location to be searched, the items to be seized, and the crimes under investigation. Dehart contends that informant Brier was unreliable and that the affidavit should have included that Starr released Brier rather than charging him, suggesting that Brier had good motive to fabricate the information he gave Starr.

When a law enforcement officer relies on information from an informant to formulate a search warrant, the probative value of that tip must be subject to scrutiny. *State v. Hensley*, 298 Kan. 422, 431, 313 P.3d 814 (2013). "Because '"[i]nformants' tips, like all other clues . . . , may vary greatly in their value and reliability,'" we determine the probative value of a tip using the totality of the circumstances as articulated in *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) (quoting *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 32 L. Ed. 2d 612 [1972]). *Hensley*, 298 Kan. at 431. "[A]n affiant seeking a warrant is no longer required to prove the informant's reliability and credibility under the 'two-pronged test' set out by the United States Supreme Court in *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)." *State v. Olson*, 11 Kan. App. 2d 485, 491, 726 P.2d 1347 (1986). Still, under the totality of the circumstances approach, we consider both the informant's veracity and the foundation of the informant's knowledge. These two factors are not granted "'independent status,'" but instead if a deficiency is evident in one of the two components it "'may be

13

compensated for . . . by a strong showing as to the other, or by some other indicia of reliability.'" *Hensley*, 298 Kan. at 431 (quoting *Gates*, 462 U.S. at 233).

Several considerations impact our determination of a tip's probative value. First, we consider whether the informant's statements have been verified as accurate or otherwise corroborated in some way. See *State v. Hicks*, 282 Kan. 599, 615, 147 P.3d 1076 (2006). Second, we consider whether the informant provides law enforcement with enough personally identifying details to be held accountable for the information they provided. *State v. Slater*, 267 Kan. 694, 700, 986 P.2d 1038 (1999). Third, we examine an informant's motives. Yet motives, however questionable, "do not necessarily prohibit reliance on information" the informant provided. *Hensley*, 298 Kan. at 432.

Brier was not a confidential informant—his name was stated in the affidavit and Starr knew his address from having stopped him. Law enforcement thus had enough personally identified details to hold him accountable for the information he provided.

Dehart asserts that we must discount the information Brier provided because he made a deal that was not disclosed in the affidavit. When the informant "has been implicated in another crime and is acting in the hope of gaining leniency," the reliability of their information cannot be presumed. *Landis*, 37 Kan. App. 2d at 418-19. Yet an informant's unexpressed, questionable motives do not necessarily prohibit reliance on information that informant supplies. *Hensley*, 298 Kan. at 432. And as the Tenth Circuit has acknowledged, judges issuing search warrants are frequently aware, even without the benefit of an explicit statement in the affidavit, that an informant may only be assisting police to avoid prosecution for their own crimes. *United States v. Morin*, 188 Fed. Appx. 709, 712 (10th Cir. 2006) (unpublished opinion) (finding the informant's purchase of methamphetamine from a dealer in the past was sufficient to alert the judge that the informant may have had self-serving reasons for being cooperative) (quoting *United States v. Avery*, 295 F.3d 1158, 1168 [10th Cir. 2002]).

14

The same is true here. The affidavit made it clear that Brier had been arrested with drugs on him, that he had a prior drug history, and that he had also been arrested for multiple person felonies. Starr's failure to disclose Brier's self-serving motivation for sharing information with law enforcement does not reasonably undermine the validity of the issuing judge's probable cause determination. It is improbable that a specific recitation of Brier's interactions with Starr, including his release, would have influenced the judge's decision-making process. The facts, detailed above, failed to show that Brier was released or was promised release in exchange for giving information about Dehart. And, as discussed above, the record fails to show that Starr's omission of the alleged "deal" was motivated by deceit, was intentional, or was part of a pattern or practice of law enforcement to omit details about informants.

Law enforcement officers corroborated some of Brier's information here. They used Brier's description of the home's appearance and location to find Dehart's alleged address in Google Maps, then matched that address to the driver's license database. Officers had Brier confirm Dehart's identity from his driver's license photo. They then took Brier to the house where he identified Dehart outside the residence.

Yet most of those corroborative steps were not included in the affidavit. The affidavit states no corroboration other than, "The informant took us to the house and showed us the fenced in area to the rear of the property used to access the garage where drug transactions take place." Our sufficiency analysis is confined to the four corners of the document. *State v. Hachmeister*, 306 Kan. 630, 638, 395 P.3d 833 (2017). And corroboration of the defendant's address alone is not enough to establish the truthfulness or reliability of the informant. *Landis*, 37 Kan. App. 2d at 419-20. See *State v. Hemme*, 15 Kan. App. 2d 198, 201-03, 806 P.2d 472 (1991); *Olson*, 11 Kan. App. 2d at 492. The affidavit here shows little corroboration.

But even if law enforcement's failure to independently corroborate Brier's statements is similar to the failure in *Landis*, we find one key difference. In *Landis*, 37 Kan. App. 2d at 420, the informant had made only one drug purchase from Landis at Landis' residence. And "[e]vidence of a single isolated drug sale may not give probable cause to believe drugs are present at a particular location." *State v. Morgan*, 222 Kan. 149, 153, 563 P.2d 1056 (1977). In contrast, Brier stated he had been purchasing methamphetamine from Dehart twice a week, from the garage on Dehart's property, for over a year. That pattern shows over 100 drug transactions at the specific location. And Brier had purchased drugs from Dehart within a week of the affidavit. Brier also provided details about Dehart's drug sales, such as that Dehart had a quart-sized plastic baggie full of methamphetamine from which he distributed smaller quantities to Brier, and that Dehart had over one pound of methamphetamine in his possession.

Brier's statements evidence a "protracted or continuous course of drug traffic at a particular location," which our Supreme Court has found "unquestionably would support the determination of probable cause." *Jacques*, 225 Kan. at 42. Brier's long course of dealing with Dehart, the recency of his drug purchases from Dehart, his details about Dehart's sale and possession of methamphetamine, coupled with Starr's visit to Dehart's house before applying for the search warrant, support the district court judge's determination that the affidavit showed a fair probability that evidence would be found in the place to be searched. *Adams*, 294 Kan. at 180.

Hoffman argued to the contrary and revisited this issue several times, yet failed to persuade the district court of error. None has been shown on appeal. Hoffman's litigation of the motion to suppress, although unsuccessful, was not ineffective.

The district court alternatively held that even if the warrant lacked probable cause, the good-faith exception to the warrant requirement would save the search, as no evidence showed the omission was made in bad faith and no other exception to the good

16

faith requirement applied. See *United States v. Leon*, 468 U.S. 897, 916-21, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). But given our holding above, we need not determine whether the good-faith exception also avoids application of the exclusionary rule.

WAS DEHART'S TRIAL COUNSEL INEFFECTIVE FOR NOT FILING A CONSTITUTIONAL SPEEDY TRIAL MOTION?

Dehart argues that Hoffman was ineffective for failing to file a constitutional speedy trial argument, correctly noting that the State did not file charges against him until two years and nine months after his arrest. He argues that this 33-month delay between his arrest and his indictment was presumptively prejudicial.

In response, the State argues that a constitutional speedy trial analysis does not apply because that analysis examines delay between charging and trial, not delay between arrest and charging. And because a constitutional speedy trial motion could not have succeeded, the district court's decision was right for the wrong reason. Alternatively, the State argues that the district court correctly held that trial counsel was not ineffective because even under a constitutional speedy trial analysis, that motion would have failed.

*The District Court's Decision*

Hoffman testified that he had been practicing law for over 40 years and had substantial experience with criminal cases filed in federal court, where constitutional speedy trial is the only type considered. In his experience, constitutional speedy trial arguments were rarely successful.

The district court agreed that the two years and nine months' delay between Dehart's arrest and his charges was presumptively prejudicial and then applied the four-factor test used to analyze a constitutional speedy trial challenge. See *Barker v. Wingo*,

17

407 U.S. 514, 530-31, 92 S. Ct. 2182, 33 L. Ed 2d 101 (1972). Ultimately, the district court held that any argument that Hoffman would have made regarding Dehart's constitutional speedy trial rights would not have succeeded, so his counsel was not ineffective for failing to make the argument.

*Analysis*

We first address an argument the State makes—that Dehart's constitutional speedy trial claim must fail because the case was dropped after Dehart was arrested in 2016 and did not become active again until he was charged in 2018. In making this argument, the State relies on Dehart's statement at the *Van Cleave* hearing that after his release on bond, "I went to court, they had me on supervised bond, they dropped that, and they dropped the case."

In general, once the constitutional right to a speedy trial attaches, its protection continues until the defendant is tried or is no longer in legal jeopardy. *State v. Ford*, 316 Kan. 558, 561, 519 P.3d 456 (2022). Unlike the statutory speedy trial right, which attaches at arraignment, in Kansas the constitutional speedy trial right attaches at the formal charging or arrest, whichever occurs first. *State v. Rivera*, 277 Kan. 109, 112, 83 P.3d 169 (2004) (finding Rivera's constitutional right to a speedy trial attached when he was arrested and served with a warrant). Dehart's speedy trial rights thus attached upon his arrest, which preceded his charges, and continued as long as he remained in legal jeopardy.

True, once the State formally dismisses charges against a defendant, the Sixth Amendment's speedy trial guarantee no longer applies. See *United States v. MacDonald*, 456 U.S. 1, 7, 102 S. Ct. 1497, 71 L. Ed. 2d 696 (1982). But the alleged dismissal here is not reflected in the record, and the State does not point us to any indication the case was "dropped" between arrest and the charging other than Dehart's statement, as is its

18

responsibility. See Kansas Supreme Court Rule 6.03(a)(3) (2026 Kan. S. Ct. R. 37); Kansas Supreme Court Rule 6.02(a)(4) (2026 Kan. S. Ct. R. 36). We thus agree with the district court that Dehart was on bond between his arrest on February 25, 2016, and November 18, 2018 (the date he was charged). Under *Rivera*'s rule, Dehart's constitutional speedy trial rights attached on February 25, 2016, before he was charged.

But the State also shows precedent holding that the right to a constitutional speedy trial does not encompass preindictment delay, citing *State v. Trotter*, 203 Kan. 31, 34, 453 P.2d 93 (1969) ("[T]he right of a speedy trial guaranteed by § 10 of the Bill of Rights of the Kansas Constitution does not refer to the preliminary examination but rather to the trial held after an indictment is returned or an information filed.").

> "The United States Supreme Court has held that the speedy trial clause of the Sixth Amendment is inapplicable to preindictment delay. *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 463, 30 L. Ed. 2d 468 (1971). This court has reached the same conclusion in interpreting § 10 of the Bill of Rights of the Kansas Constitution. *State v. Trotter*, 203 Kan. 31, 453 P.2d 93 (1969)." *State v. Smallwood*, 264 Kan. 69, 76, 955 P.2d 1209 (1998).

See *State v. Casey*, No. 109,172, 2014 WL 5610078, at *2 (Kan. App. 2014) (unpublished opinion) (*Barker* "addresses a criminal defendant's deprivation of Sixth Amendment speedy trial rights based on government delays *after* charges have been filed. The test is inapposite here, since Casey complains about the State's delay in identifying and charging him in this case.").

Yet to the contrary, the Kansas Supreme Court has repeatedly examined delays between arrest and a defendant's preliminary hearing, rather than trial, in determining whether a defendant's Sixth Amendment right to speedy trial has been violated. See, e.g., *Rivera*, 277 Kan. at 113 (citing cases). And in the cited cases, the court evaluated all the

*Barker* factors before determining whether the charges should be dismissed. We thus do the same.

A court considers four factors when a defendant makes a constitutional speedy trial claim: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530; see *State v. Owens*, 310 Kan. 865, 869, 451 P.3d 467 (2019). "The length of the delay between arrest and trial is key to the analysis. Until the delay rises to the level of being presumptively prejudicial, it is not necessary to inquire into the other *Barker* factors." *State v. Davis*, 277 Kan. 309, 334, 85 P.3d 1164 (2004). But whether a delay is presumptively prejudicial depends on the circumstances of the case. *Owens*, 310 Kan. at 872-73.

Dehart complains only of the delay between his arrest and being charged—33 months. (We note that the delay between his charges and the date his trial began was substantially the same—32 months.) Kansas appellate courts have found cases of varying lengths to be presumptively prejudicial. See *State v. Fitch*, 249 Kan. 562, 563-64, 819 P.2d 1225 (1991) (14 months); *State v. Waldrup*, 46 Kan. App. 2d 656, 680, 263 P.3d 867 (2011) (23 months); *State v. Clemence*, 39 Kan. App. 2d 791, 799, 145 P.3d 931 (2006) (over 2 years); *State v. Oakley*, No. 126,466, 2025 WL 2553222, at *4 (Kan. App. 2025) (unpublished opinion) (38 months).

We agree with the district court that this delay of 33 months was presumptively prejudicial. This is not a particularly complex case, nor have unique circumstances been shown to have contributed to the delay in its prosecution. See *State v. Weaver*, 276 Kan. 504, 511, 78 P.3d 397 (2003) ("The tolerable delay for an ordinary crime is less than for a complex one."); *Brown v. State*, No. 126,955, 2025 WL 3044112, at *8 (Kan. App. 2025) (unpublished opinion) (discussing how complex cases can necessitate delays and thus not be presumptively prejudicial under the unique circumstances of the case).

We thus reach the other three *Barker* factors. See *Davis*, 277 Kan. at 334. First, the reason for the delay. Neither the State nor Dehart presented much evidence to explain the delay. Bethany Lee, a prosecutor, did testify that the State prioritizes crimes with person victims over nonperson crimes, but she offered no other explanation. We agree with the district court that this factor weighs neutral.

Second, we weigh the defendant's assertion of his speedy trial right. Yet we find no evidence that Dehart attempted to assert it. "'[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.'" *Fitch*, 249 Kan. at 565 (quoting *Barker*, 407 U.S. at 532). This factor cuts against our finding a speedy trial violation.

To assess the final *Barker* factor—prejudice because of the delay—we consider any "oppressive pretrial incarceration; anxiety and concern of the accused; and, most important, impairment of the defense." *Smallwood*, 264 Kan. at 76. Dehart has not argued that he faced oppressive incarceration or that he was particularly anxious during his time out on bond, so those are not considerations here. His primary argument is that the delay negatively affected his ability to litigate his motion to suppress and impeded the availability of the witness—Starr. But Dehart's motion to suppress was not unsuccessful due to Starr's absence, as we discussed above. Rather, it was unsuccessful for other reasons. We find no prejudice because of the delay.

On balance, the *Barker* factors show no violation of Dehart's constitutional speedy trial right, thus a motion asserting that right would not have succeeded. Because the motion was not likely to succeed, Hoffman was not ineffective for failing to pursue it and we find no prejudice. See *Khalil-Alsalaami*, 313 Kan. at 500. The district court correctly held that Dehart's trial counsel was not ineffective on this ground.

21

WAS DEHART'S TRIAL COUNSEL INEFFECTIVE BY FAILING TO ENSURE DEHART'S JURY TRIAL WAIVER WAS VALID?

Dehart next argues that his trial counsel was ineffective for not ensuring that his jury trial waiver was valid. During the colloquy between the district court judge and Dehart when he was waiving his right to a jury trial, Dehart answered affirmatively that illnesses were affecting his ability to understand the proceedings. Neither Hoffman nor the district court intervened or reacted to that response. Dehart now argues that this was an improper waiver that prejudiced his right to a jury trial, and that Hoffman did not adequately advise him what it meant to waive his right to a jury trial.

*Additional Facts and the District Court's Holding*

Before the bench trial began, the district court asked Dehart many questions to be sure he understood the right to a jury trial he was waiving. Although Dehart complains solely of the language we have italicized below, we set out the entire colloquy:

"THE COURT: I'm going to ask you a series of questions. If you don't understand what I ask you, you don't understand what I say, ask me to repeat or rephrase it, would you?

"[DEHART]: Okay.

"THE COURT: All right. You understand you're entitled under the Constitution of the United States and the Constitution of the State of Kansas to a trial by a jury on the charges in this case?

"[DEHART]: Yes.

"THE COURT: You understand that you would participate along with your attorney and the District Attorneys, or assistant district attorneys, assigned to prosecute your case under supervision of this Court and the selection of a jury that would be chosen by members from Shawnee County to try this case.

"Do you understand that?

"[DEHART]: Yes, sir.

"THE COURT: Do you understand you would have the right to challenge members of the jury panel?

"This means that you would have the right to keep certain persons on the jury panel from being a member of the jury in your case. You would have as many challenges for cause as the Court would approve. And a challenge for cause is some good reason why a member of that jury panel could not sit as a fair and impartial juror in your case.

"You, through your attorney, would also have peremptory challenges. A peremptory challenge is one in which you do not have to give any reason at all to prevent a member from the jury panel from being a member of the jury in this case.

"Do you understand that, sir?

"[DEHART]: I think so. Yes, sir.

"THE COURT: Okay. Do you understand that all 12 members of the jury so selected would have to find and vote for your guilt before you could be adjudged guilty? That is, the verdict in your case would have to be unanimous.

"Do you understand that?

"[DEHART]: I didn't quite hear that all.

"THE COURT: Okay. Do you understand that a jury in this case, if they were to find you guilty, would have to do that in a unanimous decision? Everybody would have to agree to that.

"Do you understand that?

"[DEHART]: Okay. Yeah.

"THE COURT: Do you understand that in a non-jury, or a bench trial before a judge, the judge would sit as a trier of fact, just as the jury does, bound by the same rules of evidence and, therefore, it would be the judge, rather than a jury, who would decide whether you are guilty or not from the evidence presented in court?

"Do you understand that?

"[DEHART]: Yes, sir.

"THE COURT: Do you understand that in a jury trial, as in a non-jury trial before a judge, you would enter the courtroom clothed with a presumption of innocence, and that presumption would remain with you, until such time, if ever, that the jury or the judge, sitting as a jury, could find you guilty?

"Do you understand that?

"[DEHART]: Yes, sir.

23

"THE COURT: Have you discussed with your attorney your intention to waive your constitutional right to a trial by jury and proceed in what we call a non-jury or bench trial, before the judge only, who would decide your guilt or innocence from the evidence presented?

"[DEHART]: Yes, sir.

"THE COURT: Knowing all of this and having discussed your rights with your attorney, it is the Court's understanding that you voluntarily wish to waive your constitutional right to a jury trial and proceed to trial before a judge without a jury; is that correct?

"[DEHART]: Yes, sir.

"THE COURT: *Do you have any physical or mental illness that would disturb your thinking in any way, whatsoever, here today, or affect the voluntariness of your waiver or right to a jury trial?*

"[DEHART]: *Yes, sir.*

"THE COURT: Are you satisfied with the legal advice Mr. Hoffman has given you with regard to the decision to waive a jury trial?

"[DEHART]: Yes, sir.

"THE COURT: Do you have anything you want to ask me or anything you want to ask Mr. Hoffman with regard to this issue before I make a finding?

"[DEHART]: No, sir.

"THE COURT: All right. The decision to waive a jury trial is your own free and voluntary act; is that right?

"[DEHART]: Yes, sir.

"THE COURT: Has anyone forced you or attempted to force you in your decision to waive a right to a jury?

"[DEHART]: No, sir.

"THE COURT: Has anybody promised you anything in exchange for your waiving a right to a jury?

"[DEHART]: No, sir.

"THE COURT: Very well. Then I'm going to find that the defendant's waiver of a jury trial is freely, voluntarily, and intelligently made with the advice and assistance of competent counsel." (Emphases added.)

24

At the *Van Cleave* hearing, Dehart testified that he had had a heart attack in 2018 and then had COVID-19 and pneumonia at the same time. But the bench trial and jury trial waiver were years later—in 2021. When asked if he was "having trouble understanding what was going on in court," Dehart responded, "Yeah. When it comes to all this legal, I'm not real smart about it. I mean, I can build a house, I can drive a truck, but I don't know nothing about this." He also said he had pneumonia at sentencing, which made it difficult for him to understand what was happening. Yet nothing at the *Van Cleave* hearing explained how his medical conditions may have impacted his ability to understand the jury trial waiver or the bench trial.

After the *Van Cleave* hearing, the district court denied Dehart relief, finding that Dehart offered no clear evidence about what illness was affecting him at the time of the waiver or how that illness would have impacted the voluntariness of his waiver at the 2021 bench trial. The district court agreed that it would have been "better practice to follow up with [Dehart] after he answered 'Yes, Sir' to see if he meant to respond affirmatively and had an illness that would have disrupted his thinking." But the district court concluded that "a review of the full colloquy between the Court and [Dehart] indicates [Dehart] voluntarily waived his right to a jury trial."

As for Dehart's argument that he was just following his counsel's recommendation without truly understanding what was happening, the district court found no evidence that Hoffman coerced, tricked, or otherwise forced Dehart to waive his right to a jury trial. It concluded that Dehart had chosen to take counsel's advice to waive his jury trial rights. It found that Christian Dunbar, Hoffman's legal assistant, testified credibly that he remembered Hoffman discussing with Dehart his decision to waive the jury trial. The district court thus held that Hoffman's performance was not deficient.

Alternatively, the district court found that even if Hoffman's performance was deficient, Dehart showed no prejudice, considering the strong evidence against Dehart,

25

especially his multiple confessions to law enforcement. Dehart thus failed to show how a jury determining the facts of the case would have resulted in a different outcome.

*Analysis*

The Sixth Amendment to the United States Constitution and sections 5 and 10 of the Kansas Constitution Bill of Rights guarantee a criminal defendant the right to a jury trial in felony cases. See K.S.A. 22-3403(1) ("The defendant and prosecuting attorney, with the consent of the court, may submit the trial of any felony to the court. All other trials of felony cases shall be by jury."). Although "[a] criminal defendant may waive the fundamental right to a jury trial if the court and State agree to the waiver," such waivers are "strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury." *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012) (citing *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 [1975]).

So the district court cannot accept a jury trial waiver "'unless the defendant, after being advised by the court of his right to trial by jury, personally waives his right to trial by jury, either in writing or in open court for the record.'" *Irving*, 216 Kan. at 589-90. The test for determining the waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. Whether that test is satisfied depends upon the particular facts and circumstances in each case. *Beaman*, 295 Kan. at 859.

We agree that the most prudent course of action would have been for Hoffman and the district court to clarify what Dehart meant when he responded affirmatively that he had a "physical or mental illness that would disturb [his] thinking in any way, whatsoever, here today, or affect the voluntariness of [his] waiver or right to a jury trial." But viewing the colloquy as a whole, we find it more likely that Dehart was merely repeating his pattern of affirmative responses, than that Dehart meant to notify the court

26

of an illness that was affecting his thinking or the voluntariness of his waiver of a jury trial.

But even disregarding Dehart's intent, we find his waiver voluntary. When we consider Dehart's statement in context of the full colloquy between Dehart and the district court judge, the record reflects that the waiver was voluntary and made by a person who knew what he was doing. The district court thoroughly advised Dehart on his right to a jury trial. Dehart stated that

- he had discussed the waiver with Hoffman;
- he was satisfied with Hoffman's representation;
- he did not have any questions for the district court or Hoffman;
- the decision to waive a jury trial was his "own free and voluntary act";
- no one forced him into his decision to waive his right to a jury trial; and
- he received no promises in return.

We also have the benefit of testimony from the *Van Cleave* hearing to assess what physical or mental illness might have affected Dehart's ability to understand the waiver. Yet at that hearing, Dehart presented no evidence as to what was ailing him in 2021 or could have affected his waiver then. The only indications of physical or mental impairment are Dehart's heart attack, his COVID-19 diagnosis, and pneumonia three years before his 2021 bench trial and jury trial waiver. And the only confusion Dehart alleged was about "all this legal" stuff. That generalized confusion is typical for nonlawyers and does not cut against the voluntariness of Dehart's waiver of a jury trial.

The district court's findings on Hoffman's performance are supported by substantial competent evidence. We thus find it unnecessary to also address the lack of prejudice to Dehart from a bench trial.

27

WAS DEHART'S TRIAL COUNSEL INEFFECTIVE IN COMMUNICATING AND ADVISING DEHART DURING PLEA NEGOTIATIONS?

Dehart next argues that Hoffman was ineffective because he never communicated any plea offers to him. The district court rejected this claim, finding the credible evidence pointed the other way.

*Analysis*

Hoffman's duty relating to this issue is set out in Kansas Rule of Professional Conduct (KRPC) 1.4 (2026 Kan. S. Ct. R. at 331). That Rule requires an attorney to keep a client reasonably informed about the status of the case and to comply with reasonable communication requests. KRPC 1.4(a). An attorney is required to advise his or her client on a matter to the extent that it is reasonably necessary for the client to exercise an informed decision. KRPC 1.4(b). Thus, "[a] lawyer who receives from opposing counsel an offer of . . . a proffered plea bargain in a criminal case should promptly inform the client of its substance unless prior discussions with the client have left it clear that the proposal will be unacceptable." KRPC 1.4, Comment [1] (2026 Kan. S. Ct. R. at 331).

At the *Van Cleave* hearing, Hoffman testified he believed the State would never agree to a plea offer that did not involve Dehart serving prison time, and that Dehart was never going to accept a plea that required him to serve time in prison. Still, Hoffman recalled the State making a plea offer, and he recalled sharing this offer with Dehart.

Similarly, Dunbar testified that Hoffman discussed plea offers with Dehart on more than one occasion. Dunbar testified that the sticking point with plea negotiations was Dehart's desire not to serve any prison time.

Prosecutors Lee and Scott Wenger testified that they had discussed plea offers with Hoffman. Lee's emails to Hoffman showed Lee had tendered plea offers to Hoffman more than once. Lee made plea offers not only by email but also with Hoffman in person at the courthouse. And Hoffman's email responses to Lee show that Hoffman had communicated the State's plea offer to Dehart, which Dehart rejected.

Wenger testified that he and Hoffman had discussed what Dehart might be willing to plead to, but those discussions never went very far because of how far apart the State and Dehart were about the sentencing disposition of a plea. Wenger understood that Dehart was unwilling to accept any plea that would require prison time—Dehart was set on probation. And Lee and Wenger both testified that the State was never willing to offer a plea that recommended probation.

The district court judge specifically found the testimony of Lee, Wenger, and Dunbar to be credible, and this court cannot second guess that finding on appeal. See *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). Crediting their testimony, we find that Hoffman adequately communicated the plea offers to Dehart. Yet Hoffman had no duty to communicate plea offers that would require prison time because Hoffman's prior discussions with Dehart made it clear that such proposals would be unacceptable. See KRPC 1.4, Comment [1].

Substantial competent evidence supports the district court's factual findings, and its legal conclusions based on those facts are sound. The record shows no ineffective assistance of counsel as to plea negotiations.

## WAS DEHART'S TRIAL COUNSEL INEFFECTIVE IN LITIGATING THE MOTION FOR A DOWNWARD DISPOSITIONAL DEPARTURE?

Lastly, Dehart argues that Hoffman was ineffective at sentencing. He argues that Hoffman's sentencing motion cited incorrect legal standards (the border box statute rather than the downward departure statute) and failed to present evidence supporting a departure.

Before sentencing, Hoffman filed a motion titled "Suggestions in Support of Nonprison Sentence." The statutory grounds for this request for probation were unclear. The motion argued that 36 months' probation (as opposed to the presumptive sentence of 162 months in prison) was justified because Dehart had accepted responsibility for his actions and had committed to making amends for them. Dehart also cited his longtime ties to the community, his significant medical problems (the treatment of which he argued would impose a burden on the state prison), his lack of prior person felony convictions, his exemplary performance while free on bond for a significant time, and his strong family support.

The motion described the purpose of the Kansas Sentencing Guidelines Act and that it should not be rigidly applied, but rather than cite the downward dispositional departure provisions, the motion cited the border box provisions (K.S.A. 21-6804[q]), which do not apply to Dehart's case. At sentencing, Hoffman reiterated the arguments in the motion and added that Dehart was employed, was no longer associated with any criminal activity, and that his advanced age and exemplary behavior throughout the pendency of the case warranted a nonprison sentence.

*The District Court's Holding*

The district court disagreed and denied Dehart's motion, sentencing him to the low range on the sentencing grid—154 months' imprisonment. The district court found that Hoffman had cited the incorrect statute in his motion, yet it construed the motion as a departure motion and not a border box finding motion. The district court allowed Hoffman to argue accordingly.

After the *Van Cleve* remand, the district court held that Hoffman had not been ineffective in litigating the sentencing motion because the district court had construed it as a downward departure motion and several of the factors Hoffman cited in support of border box findings supported a downward dispositional departure under K.S.A. 21-6815. And as for not presenting evidence at the sentencing hearing, the district court explained that Dehart had testified at the *Van Cleave* hearing about what witnesses would have testified on his behalf at sentencing. According to the district court: "Notably, the alleged testimony he would have elicited would have supported the very reasons raised by Hoffman in his motion, suggesting the motion was proper despite citing to the wrong statute."

The district court added that even if Hoffman's erroneous citation showed deficient performance, Dehart could not show prejudice because he did not state any new arguments that should have been contained in his motion. So it found no indication that had Hoffman performed differently, the district court would have imposed probation instead of prison.

*Analysis*

Counsel's failure to offer mitigation evidence and seek a departure sentence, when available, can be ineffective assistance of counsel. See *Bernal v. State*, No. 101,296, 2010 WL 2852543, at *7-8 (Kan. App. 2010) (unpublished opinion).

K.S.A. 21-6815 provides a list of nonexclusive factors for a court to consider when evaluating whether a defendant should be granted a departure to a reduced sentence in disposition or duration. Hoffman's motion argued that Dehart should be sentenced to probation because of Dehart's acceptance of responsibility, commitment to making amends, his long-standing ties to the local community, strong family support, significant medical problems and the burdens those problems would impose on the Department of Corrections, and exemplary performance while on bond supervision. Hoffman also noted Dehart's continual employment, advanced age, and relatively low criminal history score.

Several of these can be mitigating factors. See *Bird*, 298 Kan. at 398-99 (offender's acceptance of responsibility); *State v. Favela*, 259 Kan. 215, 237-38, 911 P.2d 792 (1996) (age); *State v. Theurer*, 50 Kan. App. 2d 1203, 1225-26, 337 P.3d 725 (2014) (health condition); *State v. Richardson*, 20 Kan. App. 2d 932, 941, 901 P.2d 1 (1995) (sentencing court may consider facets of criminal history that the guidelines do not factor into the calculation of defendant's criminal history score such as a lengthy period of time between convictions when assessing mitigating factors for a departure).

Despite citing the incorrect statute, the motion requested the correct relief and argued the relevant factors, and the district court considered the motion as one for a dispositional departure to probation. So the improper citation is a technical, yet not a fatal, flaw.

The district court judge stated: "I'm going to find there are no substantial and compelling reasons to deviate from the sentencing guidelines." Without further elaboration, it sentenced Dehart to the mitigated sentence duration. Contrary to Dehart's suggestion, the district court was not required to elaborate why it declined to depart. K.S.A. 21-6815(a) requires the district court to state on the record the substantial and compelling reasons only if it departs. K.S.A. 21-6815(a) ("[T]he sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure sentence. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure.").

Dehart also argues that Hoffman should have admitted evidence at sentencing, such as his narcotics anonymous attendance records. But as Hoffman testified, these records were unlikely to have affected the outcome of the sentencing because Dehart was convicted of selling, not using, methamphetamine.

But even if Hoffman's sentencing motion shows his deficient performance, Dehart must still show that the deficient representation prejudiced him, meaning Dehart must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. See *Evans*, 315 Kan. at 217-18. Yet Dehart shows no other arguments that Hoffman should have included in the sentencing motion. A review of the record shows that all the arguments Dehart raises on appeal were in the motion and the district court considered them at sentencing. The *Van Cleave* court's evidentiary findings are supported by substantial competent evidence.

Dehart argues that this case is like *Bernal*, 2010 WL 2852543, at *8. There, the district court concluded, and another panel of this court affirmed, that trial counsel was ineffective by failing to pursue a departure motion, which deprived Bernal of a full, fair, and complete presentation of his case for a reduced sentence. But there, no motion was

33

filed. In contrast, Hoffman filed a sentencing motion and argued the factors for a downward dispositional departure, despite citing the statute for a border box finding. Dehart fails to demonstrate to this court how the outcome of his sentencing would have differed but for counsel's deficient representation.

We thus affirm the district court's decision that Dehart has failed to show ineffective assistance of counsel.

Affirmed.